133 Nev., Advance Opinion 40

# IN THE SUPREME COURT OF THE STATE OF NEVADA

DR. VINCENT M. MALFITANO, AN INDIVIDUAL; VIRGINIA CITY GAMING, LLC, A NEVADA LIMITED LIABILITY COMPANY; AND DELTA SALOON, INC., A NEVADA CORPORATION,
Appellants,
vs.
COUNTY OF STOREY, ACTING BY AND THROUGH THE STOREY COUNTY BOARD OF COUNTY COMMISSIONERS; AND STOREY COUNTY LIQUOR BOARD,
Respondents.

No. 70055





FILED

JUN 29 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order denying a petition for a writ of mandamus that challenged liquor- and business-licensing decisions. First Judicial District Court, Storey County; James E. Wilson, Judge.

*Affirmed.*

Holland & Hart LLP and Matthew B. Hippler, Scott Scherer, and Brandon C. Sendall, Reno,
for Appellants.

Anne Langer, District Attorney, and Keith Loomis, Deputy District Attorney, Storey County,
for Respondents.

BEFORE HARDESTY, PARRAGUIRRE and STIGLICH, JJ.

17- 21673

*OPINION*

By the Court, PARRAGUIRRE, J.:

Storey County Code (SCC) § 5.12.010(A) requires an applicant for a liquor license to "provide the county liquor license board with . . . [p]roof of financial standing to warrant an expected satisfactory and profitable business operation." In this appeal, we must determine whether the term "satisfactory" is vague, thereby rendering SCC § 5.12.010(A) unconstitutional. In addition, we must determine whether appellant Vincent Malfitano's due process or equal protection rights were violated when respondent Storey County Liquor Board (the Liquor Board) denied his applications for liquor licenses. We answer these questions in the negative; therefore, we affirm the district court's order.

## FACTS AND PROCEDURAL HISTORY

Appellant Vincent Malfitano purchased two saloon casinos located in Virginia City: the Delta Saloon and the Bonanza Saloon. At the time of purchase, Malfitano did not have the requisite licenses to operate these properties. Therefore, Malfitano authorized a properly licensed third-party entity to run the properties while he applied for gaming, liquor, and general business licenses.

Malfitano first applied for gaming licenses with the Nevada Gaming Commission (NGC). The Nevada Gaming Control Board (NGCB) held a hearing on the matter, after which it issued an order recommending that the NGC deny Malfitano's applications. In particular, the NGCB stated that Malfitano (1) failed to demonstrate "adequate business competence"; (2) failed "to disclose a significant number of important items," including "lawsuits, foreclosures, business interests, delinquent tax payments, tax liens, and default notices"; and (3) had significant



employment-related issues with his assisted-living business and his prior dental practice. The NGCB also stated that Malfitano appeared to have "significant cash flow problems." Ultimately, the NGC issued an order denying Malfitano's applications.

Malfitano also applied for business and liquor licenses with Storey County. Respondent Storey County Board of County Commissioners (the Board of Commissioners) presides over general business license applications,[1] and the Liquor Board presides over liquor license applications.[2] At a hearing on September 1, 2015, respondents initially denied the applications because a license could not be issued to two different entities for the same property, and the third-party entity still held the relevant licenses. However, Chairman McBride stated that (1) if Malfitano severed relations with the third-party entity, "there would be no delay in obtaining the licenses," and his applications would "be approved soon after"; and (2) there was "no reason not to license Dr. Malfitano except for the fact that it would be a duplication." Notably, County Manager Pat Whitten clarified that Malfitano's applications would only be considered, not necessarily approved, once he obtained control of the properties.

Thereafter, Malfitano obtained temporary licenses from Sheriff Antinoro. Malfitano also reapplied for permanent licenses after the third-party entity vacated both properties. The Board of

---

[1]The Board of Commissioners consists of Chairman Marshall McBride, Vice-Chairman Lance Gilman, and Commissioner Jack McGuffey.

[2]The Liquor Board consists of the three members of the Board of Commissioners and Storey County Sheriff Gerald Antinoro.

 

Commissioners and the Liquor Board considered Malfitano's second round of applications on October 6, 2015. Believing his applications would be granted as a matter of course, Malfitano did not attend the hearing.

Malfitano's liquor license applications were denied after three members of the Liquor Board concluded that he failed to demonstrate "[p]roof of financial standing to warrant an expected satisfactory and profitable business operation" as required under SCC § 5.12.010(A). In particular, the Liquor Board was concerned about Malfitano's financial stability due to the NGCB's findings.[3] With respect to the business license applications, the Board of Commissioners unanimously approved the Delta Saloon application and denied the Bonanza Saloon application. The latter was denied because the property did not have fire sprinklers installed, and the Storey County Fire Protection District Fire Chief stated the building was not safe.

Malfitano filed a petition for a writ of mandamus with the district court, requesting that the court reverse the respondents' decisions to deny his applications and to compel respondents to approve the applications. In his petition and subsequent pleadings, Malfitano argued that (1) respondents acted arbitrarily and capriciously in denying his license applications, (2) respondents violated his due process and equal protection rights in denying his license applications, and (3) SCC § 5.12.010(A) is unconstitutionally vague. The district court entered an order denying Malfitano's writ petition, from which Malfitano now appeals.

_____

[3]Although the NGCB's findings were not discussed at the September 1 hearing, it appears Chairman McBride was aware of the NGCB's order at that time.

## DISCUSSION

On appeal, Malfitano argues that SCC § 5.12.010(A) is unconstitutionally vague and that respondents violated his due process and equal protection rights in denying his license applications. We address these arguments in turn.

"Generally, we review a district court's decision regarding a petition for a writ of mandamus for an abuse of discretion." *Veil v. Bennett*, 131 Nev., Adv. Op. 22, 348 P.3d 684, 686 (2015). However, when an appeal of an order resolving a writ petition involves questions of law, such as the constitutionality of a statute, this court will review the district court's decision de novo. *See id.*; *Wyeth v. Rowatt*, 126 Nev. 446, 460, 244 P.3d 765, 775 (2010) (explaining that questions of law are reviewed de novo); *see also Tam v. Eighth Judicial Dist. Court*, 131 Nev., Adv. Op. 80, 358 P.3d 234, 237 (2015) (providing that constitutional issues are questions of law reviewed de novo).

### SCC § 5.12.010(A) is not unconstitutionally vague

SCC § 5.12.010(A) states that an applicant for a liquor license "shall provide the county liquor license board with . . . [p]roof of financial standing to warrant an expected satisfactory and profitable business operation." Malfitano argues that SCC § 5.12.010(A) is unconstitutionally vague because the term "satisfactory" is subjective, and it is unclear from the ordinance what the Liquor Board may find "satisfactory." Respondents argue that liquor boards have wide discretion in reviewing applications for liquor licenses and that the term "satisfactory" is not so vague as to impart unbridled discretion to the Liquor Board.

We examined the void-for-vagueness doctrine in *Carrigan v. Commission on Ethics*, wherein we explained:

> The void-for-vagueness doctrine is rooted in the Due Process Clauses of the Fifth and Fourteenth Amendments. *State v. Castaneda*, 126 Nev. 478, 481, 245 P.3d 550, 553 (2010). A law may be struck down as impermissibly vague for either of two independent reasons: "(1) if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited'; or (2) if it 'is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Id.* at 481-82, 245 P.3d at 553 (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010)). "The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). Civil laws are held to a less strict vagueness standard than criminal laws "because the consequences of imprecision are qualitatively less severe." *Id.* at 498-99.

129 Nev. 894, 899, 313 P.3d 880, 884 (2013); *see also* Nev. Const. art. 1, § 8(5); *cf. Silvar v. Eighth Judicial Dist. Court*, 122 Nev. 289, 293, 129 P.3d 682, 685 (2006) ("[T]he second prong is more important because absent adequate guidelines, a criminal statute may permit a standardless sweep, which would allow the police, prosecutors, and juries to pursue their personal predilections." (internal quotation marks omitted)).

Malfitano relies principally on *McCormack v. Herzog* for the proposition that the term "satisfactory" is unconstitutionally vague. 788 F.3d 1017 (9th Cir. 2015). The Idaho statute considered in *McCormack* required abortions to take place in a hospital, physician's office, or clinic that was *"properly* staffed" and where the physicians had "made *satisfactory* arrangements with one or more acute care hospitals" in case of

an emergency. *Id.* at 1030. Persons who performed abortions in violation of this law were subject to civil and criminal penalties. *Id.*

The Ninth Circuit recognized in *McCormack* that the terms "properly" and "satisfactory" were not defined by statute and that they "subject[ed] physicians to sanctions based not on their own objective behavior, but on the subjective viewpoints of others." *Id.* at 1031 (internal quotation marks omitted). Therefore, the Ninth Circuit held that the statute was unconstitutionally vague because the statute "could well impose criminal liability on activity that offends some people's sense of what is properly staffed and equipped or what arrangements are satisfactory, but may appear to others as more than adequate." *Id.* at 1032 (internal quotation marks omitted).

Although we agree with Malfitano and the Ninth Circuit that the term "satisfactory" is subjective, *McCormack* does not dispose of this matter for two reasons. First, unlike in *McCormack*, there is no criminal or civil penalty for failing to comply with SCC § 5.12.010(A); rather, one's application for a liquor license may simply be denied. Therefore, the United States and Nevada Constitutions necessarily tolerate a degree of vagueness in this context not otherwise permissible in the criminal context. *See Carrigan*, 129 Nev. at 899, 313 P.3d at 884.

Second, it is generally recognized that a licensing board has broad discretion in granting or refusing permits "where discretion relates to matters within the police regulation and where broad administrative discretion is necessary to protect the public health, safety, morals or general welfare." 9 Eugene McQuillin, *The Law of Mun. Corps.* § 26:85 (3d ed. rev. 2016). Accordingly, we have previously stated that such ordinances need not prescribe detailed standards. *See Mills v. City of*

*Henderson*, 95 Nev. 550, 552, 598 P.2d 635, 636 (1979) ("When . . . the activity to be licensed . . . is the proper and necessary subject of police surveillance and regulation, we think the grant of discretionary power to license need not be restricted by specific standards."); *see also State ex rel. Grimes v. Bd. of Comm'rs of Las Vegas*, 53 Nev. 364, 372, 1 P.2d 570, 572 (1931) ("[F]or the carrying on of a business of a character regarded as tending to be injurious, such as dealing in intoxicating liquor, a wide discretion may be given to licensing officers to grant or withhold a license *without prescribing definite and uniform rules of action*." (emphasis added)).

As applied to the ordinance before us, this precedent and the ordinance's nature vitiate Malfitano's arguments. SCC § 5.12.010(A) requires an applicant to demonstrate that they have the financial ability to run "an expected satisfactory and profitable business operation." The term "satisfactory" is commonly understood to mean "adequate." *See Satisfactory, Merriam-Webster's Collegiate Dictionary* (11th ed. 2007). Although the Liquor Board must exercise its discretion in determining whether an applicant has met this requirement, *see Grimes*, 53 Nev. at 373-75, 1 P.2d at 572-73, this discretion is permitted by the nature of the ordinance and tempered by due process. That is, because neither criminal nor civil penalties are at stake and the activity to be regulated is deemed hazardous to the public welfare, a greater degree of discretion is allowed.

Furthermore, the Liquor Board's discretion is cabined by the ordinance itself; the Liquor Board may examine whether the applicant's financial standing "warrant(s) an expected satisfactory and profitable business operation," the existence and extent of the applicant's criminal record, and the applicant's experience in the liquor business. SCC

§ 5.12.010; *see* McQuillin, *supra*, § 26:82. The Liquor Board's discretion is also limited by the requirement that its decision be based on objective facts—its decision cannot be arbitrary; but the mere possibility that the Liquor Board might abuse its discretion is not sufficient to render the ordinance unconstitutional. *See Moyant v. Borough of Paramus*, 154 A.2d 9, 22 (N.J. 1959); McQuillin, *supra*, § 26:82. Accordingly, we hold that the term "satisfactory" in SCC § 5.12.010(A) does not authorize or encourage discriminatory enforcement and is not unconstitutionally vague. *See Moyant*, 154 A.2d at 22-23 (holding that the use of the standard "satisfactory" in an ordinance regarding the issuance of solicitor licenses was legally sufficient).

*The Liquor Board did not violate Malfitano's due process rights in denying his license applications*

Malfitano argues that the Liquor Board violated his due process rights when it denied his liquor license applications. The Liquor Board contends that Malfitano does not have a cognizable property interest in permanent liquor licenses, and thus, the denials do not implicate his due process rights.

The Due Process Clauses of the United States and Nevada Constitutions prohibit the State from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; Nev. Const. art. 1, § 8(5). There are two steps to analyzing a procedural due process claim: first, it must be determined "whether there exists a liberty or property interest which has been interfered with by the State, . . . [and second] whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The United States Supreme Court has stated that cognizable property interests "are not created by the Constitution," but "[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*

Malfitano argues that he had a legitimate claim of entitlement to permanent liquor licenses because (1) he held temporary liquor licenses, (2) the Liquor Board had promised him that his applications would be approved, and (3) the Liquor Board had a history of leniently granting applications. He also argues that *Burgess v. Storey County Board of Commissioners*, 116 Nev. 121, 992 P.2d 856 (2000), requires resolving this matter in his favor. We disagree.

First, a temporary liquor license is a privilege created and defined by the Storey County Code. Specifically, the Code states that "[a] temporary liquor license may be issued for the purpose of continuing an existing business *during the period in which a liquor license application has been made, and prior to its approval or disapproval.*" SCC § 5.12.130 (emphasis added). The Code does not require the Liquor Board to grant a temporary license holder's application for a permanent license; rather, the Code explicitly recognizes that such applications may be denied. Therefore, Malfitano's temporary licenses do not, in themselves, grant him a legitimate claim of entitlement to permanent liquor licenses. *Cf. Groten*

*v. California*, 251 F.3d 844, 850 (9th Cir. 2001) (holding that the appellant had a legitimate claim of entitlement to a license if he satisfied three prerequisites because a federal statute *required* states to issue a license under such circumstances).

Second, we hold that the district court did not abuse its discretion in concluding Malfitano did not have an agreement with the Liquor Board that his applications would be granted. There is no evidence that Chairman McBride's statements were made on behalf of the other members of the Liquor Board. More importantly, County Manager Whitten corrected Chairman McBride's statements and clarified that Malfitano's applications would only be considered, not necessarily approved, once he took control of the properties.[4] Therefore, even if Malfitano sincerely believed he was entitled to the licenses, this belief was not mutually held by the Liquor Board. *See Gerhart v. Lake Cty.*, 637 F.3d 1013, 1020 (9th Cir. 2011) (holding that the appellant did not have a protected property interest in a permit because he "did not have an ongoing or informal agreement with the County," and he had "not alleged a mutual understanding with the Commissioners").

Third, the United States Supreme Court has stated that "[a] constitutional entitlement cannot be created—as if by estoppel—merely because a wholly and *expressly* discretionary state privilege has been granted generously in the past." *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981) (internal quotation marks omitted); *see also Gerhart*, 637 F.3d at 1021 ("[A] government body's past practice of granting a

---

[4]Video of the hearing indicates Chairman McBride agreed with County Manager Whitten's correction.

government benefit is insufficient to establish a legal entitlement to the benefit."); *see also Cty. of Clark v. Atl. Seafoods, Inc.*, 96 Nev. 608, 610, 615 P.2d 233, 234 (1980) (stating that a county liquor board enjoys wide discretion in reviewing applications for licenses). Thus, even assuming the Liquor Board has leniently issued liquor licenses in the past, this does not entitle Malfitano to a permanent liquor license.

Finally, *Burgess* does not favor Malfitano either. In *Burgess*, the Storey County Licensing Board revoked the appellant's brothel license because of his association with the Hell's Angels. 116 Nev. at 122-23, 992 P.2d at 857-58. This court held that the revocation violated the appellant's due process rights because "the Board failed to provide [him] with proper notice of what was to be discussed at the license revocation hearing." *Id.* at 125, 992 P.2d at 858-59. Following this rationale, Malfitano argues that he did not have notice that the NGCB's findings would be discussed at the October 6 hearing in violation of his due process rights.

"The protections of due process attach only to deprivations of property or liberty interests." *Id.* at 124, 992 P.2d at 858 (internal quotation marks omitted). In *Burgess*, this court initially determined that the appellant had a property interest in the brothel license. *See id.* at 124-25, 992 P.2d at 858. In particular, the appellant had possessed the brothel license for 15 years, and the Storey County Code stated that the license could be revoked only after a hearing and good cause shown. *See id.* at 122-24, 992 P.2d at 857-58.

Here, the Liquor Board did not revoke existing licenses, nor, as discussed above, has Malfitano demonstrated a legitimate claim of entitlement to the licenses at issue. Therefore, Malfitano had no property

interest to which the due process notice requirements could apply, and *Burgess* does not support his argument. Accordingly, we hold that the district court did not abuse its discretion when it concluded that Malfitano's due process rights were not violated.[5]

*The Liquor Board did not violate Malfitano's equal protection rights in denying his license applications*

Finally, Malfitano argues that the Liquor Board violated his equal protection rights because his applications were held to a higher standard than that of previous applicants and that the Liquor Board denied his applications due to animus towards him. Respondents argue that the Liquor Board had more information available to it when considering Malfitano's applications because he had recently been denied a gaming license and that the Liquor Board could consider the NGCB's findings.

"The right[ ] to equal protection . . . [is] guaranteed by the Fourteenth Amendment of the United States Constitution and . . . Article 4, Section 21 of the Nevada Constitution." *Rico v. Rodriguez*, 121 Nev. 695, 702-03, 120 P.3d 812, 817 (2005). The United States Supreme Court has held that an equal protection claim may be brought by a "class of one" if the appellant can demonstrate that he or "she has been intentionally treated differently from others similarly situated and that there is no

---

[5]Malfitano also argues that the district court abused its discretion in concluding that his due process rights were not violated by the Board of Commissioners' decision to deny one of his business license applications. However, Malfitano does not articulate how he has a legitimate claim of entitlement to a business license. Therefore, we reject this argument. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (stating that this court need not consider claims that are not cogently argued or supported by relevant authority).

rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Assuming for the sake of argument that Malfitano was treated differently than other applicants, we hold that the district court did not abuse its discretion in concluding the Liquor Board had a rational basis for doing so. In particular, the Liquor Board was aware that Malfitano had recently been denied a gaming license because he (1) failed "to disclose a significant number of important items," including "lawsuits, foreclosures, business interests, delinquent tax payments, tax liens, and default notices"; (2) had significant employment-related issues with his assisted-living business and his prior dental practice; and (3) appeared to have "significant cash flow problems." These concerns directly relate to Malfitano's financial standing under SCC § 5.12.010(A), and therefore, the Liquor Board had a rational basis for distinguishing Malfitano's application from those of previous applicants.[6]

## CONCLUSION

We hold that the term "satisfactory" does not render SCC § 5.12.010(A) unconstitutionally vague. In addition, we hold that the district court did not abuse its discretion when it concluded that

---

[6]We also reject Malfitano's argument that the Liquor Board's decision to deny his applications was guided by animus. Each member that voted to deny Malfitano's liquor license applications stated that they denied the applications because of concerns regarding Malfitano's financial standing. Nothing in the record indicates that any member of the Liquor Board harbored a personal animus towards Malfitano.

Malfitano has not argued that the Board of Commissioners' denial of one of his business license applications violated his equal protection rights.

Malfitano's due process and equal protection rights were not violated by the denial of his license applications. Accordingly, we affirm the district court's order.

_____, J.
Parraguirre

We concur:

_____, J.
Hardesty

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A