# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1516

MARKO VRLJICAK,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals

ARGUED NOVEMBER 1, 2012—DECIDED NOVEMBER 20, 2012

Before EASTERBROOK, *Chief Judge*, and ROVNER and
HAMILTON, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Marko Vrljicak, a citizen of
Serbia, requested asylum on the ground that his native
land would persecute him because of his sexual orienta-
tion. An immigration judge denied that request, ruling
that Vrljicak is ineligible because he did not seek
asylum within one year of entering the United States.
8 U.S.C. §1158(a)(2)(B). Vrljicak arrived on April 2, 2009,

under a work visa, which expired September 30, 2009. He did not leave and was in unauthorized status on July 14, 2010, when he applied for asylum. The Board of Immigration Appeals agreed with the IJ that Vrljicak took too long to seek asylum, but it also held that he is entitled to withholding of removal and remanded so that the final requirements for that status could be satisfied.

We have jurisdiction of his petition because he has been ordered removed from the United States, and withholding execution of that order does not give Vrljicak all the benefits of asylum. See *Jiménez Viracacha v. Mukasey*, 518 F.3d 511 (7th Cir. 2008). But we do not have jurisdiction to review the Board's conclusion that his request for asylum was untimely. 8 U.S.C. §1158(a)(3). Another provision, 8 U.S.C. §1252(a)(2)(D), adds a proviso allowing courts to entertain constitutional and other legal arguments. Vrljicak concedes that his application came more than a year after his entry, but he contends that the Board should have excused his delay under 8 C.F.R. §1208.4(a)(5)(iv). The Board rejected that argument, and Vrljicak now maintains that the regulation is unconstitutionally vague. It is not clear how he would benefit from such a decision; knock out an exception to the statute, and the one-year time limit remains. Perhaps Vrljicak believes that, if the exception is too vague, then the statutory rule itself cannot be enforced. No matter; the challenge to the regulation is unavailing.

Section 1208.4(a) provides a regulatory definition of the statutory term "extraordinary circumstances". Subdivi-

sion (iv), on which Vrljicak relied before the Board and which he now contends is unconstitutional, reads: "The applicant maintained Temporary Protected Status, lawful immigrant or nonimmigrant status, or was given parole, until a reasonable period before the filing of the asylum application". In other words, an alien properly in the United States may request asylum during a "reasonable" time after authorized status ends, even if the total time between entry and application exceeds one year. The Board concluded that it was not "reasonable" for Vrljicak to wait nine months after his visa expired. He calls the word "reasonable" vague and contends that the Board should have used a rule (such as "180 days") rather than a standard. Some parts of the Immigration and Nationality Act *do* use 180 days as the maximum period for action by an alien in unauthorized status following the expiration of a labor visa. See, e.g., 8 U.S.C. §1255(k)(2). Again it is hard to see how this would have helped Vrljicak; he took much more than 180 days. This is not a first amendment overbreadth case, so he can challenge the regulation only as applied. See, e.g., *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449–50 & n.6 (2008); *United States v. Salerno*, 481 U.S. 739, 745 (1987). Vrljicak told the immigration judge that he did not apply sooner because he expected the situation in Serbia to improve and did not know that there was a deadline; these explanations show that the choice between "reasonable" and some other language in §1208.4(a)(5)(iv) did not affect his conduct. As applied to him, the regulation is not problematic.

Anyway, protean words such as "reasonable" are ubiquitous in law. Think of the reasonable-person

standard in tort law. We know from *United States v. Powell*, 423 U.S. 87 (1975), and many other decisions, that just because it is *possible* to replace a standard with a numeric rule, the Constitution does not render the standard a forbidden choice. Vrljicak contends that it is constitutionally mandatory to curtail official discretion whenever feasible. Yet many decisions of the Supreme Court hold that the Constitution itself creates capacious discretion. Think of *United States v. Booker*, 543 U.S. 220 (2005), and *Kimbrough v. United States*, 552 U.S. 85 (2007), which hold that district judges may use personal penological philosophies in criminal sentencing, notwithstanding the Sentencing Guidelines, as long as the sentences are within statutory limits and reasonable. By Vrljicak's approach, however, the holdings in *Booker* and *Kimbrough* are backward and the Court's reasonableness standard unconstitutional. Vrljicak's understanding of due process evidently is not the Supreme Court's. (And it does not help him to assert that the regulation allows different treatment of similarly situated persons and violates the equal-protection principles the Supreme Court has found in the due process clause; the same could have been said about *Booker* and *Kimbrough*.)

Standards such as "reasonable" are less precise than rules such as "180 days," but flexibility has its benefits: under the standard, immigration officials can accommodate unanticipated circumstances, while a deadline is unyielding. Decisions such as *Parker v. Levy*, 417 U.S. 733 (1974), and *Civil Service Commission v. Letter Carriers*, 413 U.S. 548 (1973), hold that legislatures and agencies

may adopt standards and work out the details in adjudication. The National Labor Relations Board has been wrestling with "unfair labor practices" for almost 80 years, and the "public interest, convenience, and necessity" standard for agency action has an even older lineage. That these standards continue to pose problems of application does not make them—and the method of elaboration in the common-law fashion—unconstitutional. Indeed, neither the administrative nor the judicial system could proceed without the latitude they afford. (For another example, think of the phrase "good cause" that peppers the federal rules of civil and criminal procedure.)

The National Immigrant Justice Center filed a brief as *amicus curiae* asking us to sidestep the constitutional question by deeming the entire regulatory apparatus for implementing the statutory exceptions to be deficient. The Center maintains that the regulation and its administration have "become completely unhinged from the purposes and goals of the underlying statutory provision." No such argument was presented to the Board. Whether or not we have the authority to entertain it at the Center's request, it would be inappropriate to do so. The Center should propose appropriate changes to the regulation's authors at the Department of Justice and the Department of Homeland Security, then ask the Board of Immigration Appeals to apply the regulation (the current version or any amended one) in harmony with the statute. Judicial review should follow, and not precede, full consideration by the

officials charged with devising and applying the rules for implementing the statute.

The petition for review is denied.