129 Nev., Advance Opinion 95

# IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL A. CARRIGAN, FOURTH
WARD CITY COUNCIL MEMBER OF
THE CITY OF SPARKS,
Appellant,
  vs.
THE COMMISSION ON ETHICS OF
THE STATE OF NEVADA,
Respondent.

No. 51920

FILED

NOV 27 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK



On remand from the United States Supreme Court.

*Affirmed.*

Griffin, Rowe & Nave LLP and John W. Griffin and Matthew M. Griffin,
Reno; Orrick, Herrington & Sutcliffe LLP and Rachel M. McKenzie and
Mark S. Davies, Washington, D.C.,
for Appellant.

Nevada Commission on Ethics and Yvonne M. Nevarez-Goodson, Carson
City; Vinson & Elkins, LLP, and Jeremy C. Marwell, Washington, D.C.,
for Respondent.

BEFORE THE COURT EN BANC.[1]

---

[1]After oral argument, the Honorable Allan R. Earl, Judge of the
Eighth Judicial District Court, was designated by the Governor to sit in
place of the Honorable Ron D. Parraguirre, Justice, who voluntarily
recused himself. Nev. Const. art. 6, § 4.

3/10/14: Corrected per letter to publishers. CJ

13-35859

*OPINION*

By the Court, PICKERING, C.J.:

This case returns to us from the United States Supreme Court, *Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. ___, 131 S. Ct. 2343 (2011), which reversed our decision in *Carrigan v. Comm'n on Ethics*, 126 Nev. ___, 236 P.3d 616 (2010) (5-1). Where we held that Sparks City Councilman Michael Carrigan's vote on the Lazy 8 hotel/casino project constituted protected speech under the First Amendment, 126 Nev. at ___, 236 P.3d at 621, the Supreme Court held the opposite. 564 U.S. at ___, 131 S. Ct. at 2347. "[T]he act of voting" by an elected official on a local land-use matter, the Supreme Court held, "symbolizes nothing"; it is "nonsymbolic conduct engaged in for an independent governmental purpose." *Id.* at ___, 131 S. Ct. at 2350-51. Since Carrigan's vote on the Lazy 8 project did not constitute protected speech, the Supreme Court reversed our decision that the First Amendment overbreadth doctrine invalidated the conflict-of-interest recusal provision in Nevada's Ethics in Government Law. *Id.*

On remand, Carrigan makes two additional arguments. First, he contends that the conflict-of-interest recusal provision in Nevada's Ethics in Government Law is unconstitutionally vague, violating the Due Process Clauses of the Fifth and Fourteenth Amendments; second, that it unconstitutionally burdens the First Amendment freedom-of-association rights shared by Nevada's elected officials and their supporters. Because Carrigan did not raise these arguments in his brief in opposition to the Commission's petition for a writ of certiorari, the Supreme Court did not address them. 564 U.S. at ___, 131 S. Ct. at 2351. We do so now.

SUPREME COURT
OF
NEVADA

(O) 1947A

2

## I.

### A.

This proceeding challenges the constitutional validity of NRS 281A.420(2)(c) and NRS 281A.420(8), the core conflict-of-interest recusal provisions in Nevada's Ethics in Government Law.[2] The lead-in section to the Ethics Law reminds us that "[a] public office is a public trust and shall be held for the sole benefit of the people." NRS 281A.020(1)(a). And it emphasizes that an elected public officer "must commit himself to avoid conflicts between his private interests and those of the general public whom he serves." NRS 281A.020(1)(b).

NRS 281A.420(2)(c) prohibits public officers from voting on matters as to which they have a conflict of interest. It states that "a public officer shall not vote upon . . . a matter with respect to which the independence of judgment of a reasonable person in his situation would be materially affected by," *inter alia*, "[h]is commitment in a private capacity to the interests of others." A disqualifying "commitment in a private capacity to the interests of others" means a "commitment to a person" who is a member of the officer's household; is related to the officer by blood, adoption, or marriage; employs the officer or a member of his household; or has a substantial and continuing business relationship with the officer. NRS 281A.420(8)(a)-(d). Paragraph (e) adds a loophole-closing catchall:

---

[2]To maintain consistency with prior opinions, all citations are to the 2007 version of the Nevada Ethics in Government Act. 2007 Nev. Stat. ch. 538. Although the Act was amended in 2009 and 2013, the amendments are not relevant here.

"Any other commitment or relationship that is substantially similar" to one of those listed in the preceding paragraphs (a)-(d).

The Ethics in Government Law offers an advisory opinion option. Under NRS 281A.440(1), a public officer may request and receive an Ethics Commission opinion regarding "the propriety of his own past, present or future conduct as an officer," including, specifically, whether a conflict of interest exists that requires the officer to abstain from voting on a matter, NRS 281A.460. The Ethics Commission must render an advisory opinion "as soon as practicable or within 45 days after receiving a request, whichever is sooner." NRS 281A.440(1). The request is confidential, NRS 281A.440(5), and the advisory opinion final and authoritative. *See* NRS 281A.440(1).

Nevada's Ethics Law distinguishes between willful and nonwillful violations. The distinction does not affect the determination of whether a violation has occurred, only the sanction to be imposed. If the Commission deems the violation willful, it "*may*" but is not required to "impose . . . civil penalties" of up to $5,000 for a first violation, together with attorney fees and costs, NRS 281A.480(1) & (2) (emphasis added). If the Commission believes the violation may also constitute a crime, it must refer the matter to the Attorney General or the district attorney "for a determination of whether a crime has been committed that warrants prosecution." NRS 281A.480(7).

NRS 281A.170 defines "[w]illful violation" to mean "the public officer or employee knew or reasonably should have known that his conduct violated" the Ethics Law. By law, the Commission cannot deem a violation willful if the public officer

> . . . establishes by sufficient evidence that he satisfied all of the following requirements:

(a) He relied in good faith upon the advice of the legal counsel retained by the public body which the public officer represents . . . ;

(b) He was unable, through no fault of his own, to obtain an opinion from the Commission before the action was taken; and

(c) He took action that was not contrary to a prior published opinion issued by the Commission.

NRS 281A.480(5).

## B.

The Ethics Commission censured Sparks City Councilman Michael Carrigan for voting to approve the Lazy 8 hotel/casino project despite a disqualifying conflict of interest. The conflict of interest grew out of Carrigan's relationship with Carlos Vasquez, Carrigan's longtime friend and campaign manager. For the six months leading up to the Lazy 8 vote, Vasquez was managing Carrigan's reelection campaign free of charge—the third such campaign Vasquez had managed for Carrigan—and placing Carrigan's campaign ads at cost. At the same time, Vasquez was receiving a $10,000-a-month retainer from the Lazy 8's principals, Red Hawk Land Company and/or Harvey Whittemore. Vasquez openly lobbied the Sparks City Council to approve the Lazy 8 project and testified before the body as a paid consultant.

Several citizens complained to the Commission that Carrigan should not have voted on the Lazy 8 project because of a conflict of interest. An evidentiary hearing followed, at which both Carrigan and Vasquez testified. After deliberation, the Commission issued a written opinion, which included findings of fact and conclusions of law. The Commission's findings of fact included findings that Vasquez "has been a close personal friend, confidant and political advisor" to Carrigan

"throughout the years"; that Carrigan "confides in Mr. Vasquez on matters where he would not confide in his own sibling"; and that "[t]he sum total of their commitment and relationship equates to a 'substantially similar' relationship to those enumerated under NRS [281A.420(8)(a)-(d)], including a close personal friendship, akin to a . . . family member, and a 'substantial and continuing business relationship.'" *See* NRS 281A.420(8)(e).

In its conclusions of law, the Commission opined that "commitment in a private capacity to the interests of others," NRS 281A.420(2)(c), includes "close relationships which rise to such a level of commitment to another person's interest that the independence of judgment of a reasonable person in the public officer's position would be affected." In the Commission's view, "[i]ndependence of judgment means a judgment that is unaffected by that commitment or relationship." NRS 281A.420(2)(c)'s recusal requirement, the Commission emphasized, is an objective, "reasonable person" standard. Regardless of Carrigan's subjective belief that he was unbiased, "[a] reasonable person in Councilman Carrigan's position would not be able to remain objective on matters brought before the Council by his close personal friend, confidant and campaign manager, who was instrumental in getting Councilman Carrigan elected three times." "[U]nder such circumstances," the Commission wrote, "a reasonable person would undoubtedly have such strong loyalties to this close friend, confidant and campaign manager as to materially affect the reasonable person's independence of judgment" on the Lazy 8 hotel/casino project.

Carrigan attempted to raise an "advice of counsel" defense before the Commission. Thus, he testified that the Sparks City Attorney

advised him that his relationship with Vasquez did not create a disqualifying conflict of interest because he, Carrigan, did not personally stand to reap financial gain or loss from the Lazy 8 project. Carrigan admitted that, before he voted on the Lazy 8 project, he knew he could have asked the Commission for an advisory opinion—and that he had ample time to do so—but chose not to.

The Commission unanimously found that Carrigan violated NRS 281A.420(2)(c) by not abstaining from voting on the Lazy 8 matter. While it publicly censured him, it imposed no civil penalty or fine because it deemed his violation not willful.

## II.

### A.

We first consider—and reject—Carrigan's contention that NRS 281A.420(2)(c)'s recusal provision is void for vagueness where, as in his case, the disqualifying "commitment in a private capacity to the interests of others" is based on NRS 281A.420(8)(e)'s "substantially similar" provision, rather than one of the four relationships specified in NRS 281A.420(8)(a)-(d).

The void-for-vagueness doctrine is rooted in the Due Process Clauses of the Fifth and Fourteenth Amendments. *State v. Castaneda*, 126 Nev. ___, ___, 245 P.3d 550, 553 (2010). A law may be struck down as impermissibly vague for either of two independent reasons: "(1) if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited'; or (2) if it 'is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Id.* (quoting *Holder v. Humanitarian Law Project*, 561 U.S. ___, ___, 130 S. Ct. 2705, 2718 (2010)). "The degree of vagueness that the Constitution tolerates—as well

as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). Civil laws are held to a less strict vagueness standard than criminal laws "because the consequences of imprecision are qualitatively less severe." *Id.* at 498-99. Even so, when a statute "interferes with the right of free speech or of association, a more stringent vagueness test" applies. *Id.* at 499.

Carrigan's vagueness challenge focuses on language culled from this court's prior opinion, rather than statutory text as applied to the facts of his case. This leads his analysis astray. In the first place, our prior opinion rested on the First Amendment overbreadth doctrine. Unlike overbreadth challenges, "a Fifth Amendment vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression." *Humanitarian Law Project*, 561 U.S. at ___, 130 S. Ct. at 2719. Second, our prior opinion held that Carrigan's vote on the Lazy 8 project constituted protected speech under the First Amendment—a proposition the Supreme Court unanimously rejected. *Carrigan*, 564 U.S. at ___, 131 S. Ct. at 2347. While laws that "touch upon 'sensitive areas of basic First Amendment freedoms'" may raise "'special'" vagueness concerns because of their "'obvious chilling effect,'" *FCC v. Fox Television Stations, Inc.*, 567 U.S. ___, ___, 132 S. Ct. 2307, 2318 (2012) (quoting *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964); *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870-71 (1997)), the Supreme Court's conclusion that Carrigan's vote on the Lazy 8 did not constitute protected speech dispels such "special" vagueness concerns. Thus, we analyze Carrigan's vagueness challenge under the relaxed standards appropriate to a due

process challenge to a civil statute not affecting the challenger's First Amendment freedoms.[3]

Carrigan acknowledges that the four enumerated bases for recusal in NRS 281A.420(8)(a)-(d) are clear. His claim is that NRS 281A.420(8)(e), which requires recusal for relationships "substantially similar" to the four enumerated ones, is "hopelessly vague." But he incorrectly reads NRS 281A.420(8)(e) in isolation from the rest of NRS 281A.420. *See Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 65 (1st Cir. 2011) ("Terms claimed to be vague must be interpreted in light of their precise statutory context."); *Comm'n on Ethics v. Ballard*, 120 Nev. 862, 866, 102 P.3d 544, 546 (2004) (this court interprets the ethics laws "in the context of the entire statutory scheme").

NRS 281A.420(8)(e) is not free-standing. It draws meaning from the rest of NRS 281A.420, which first explains when disqualification is required (situations in which "the independence of judgment of a reasonable person in [the public officer's] situation would be materially affected by . . . [h]is commitment in a private capacity to the interests of others," NRS 281A.420(2)(c)); then identifies the types of relationships that are disqualifying (household, family, employment, or business, NRS 281A.420(8)(a)-(d)); and finally, under those headings, provides for disqualification based on "[a]ny other commitment or relationship that is substantially similar" to those listed, NRS 281A.420(8)(e).

"Where general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or

---

[3]We reject Carrigan's First Amendment right of association argument *infra* in section II.B.

class specifically mentioned." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 199 (2012). Thus, paragraph 8(e) does not sweep in entirely new types of relationships. Rather, it closes potential loopholes in the Ethics Law by giving the Commission the flexibility to address relationships that technically fall outside the four categories enumerated in paragraphs 8(a)-(d) yet implicate the same concerns and are substantially similar to them, such as a relationship with a domestic partner or fiancée.

The legislative history of NRS 281A.420(8)(e) confirms that it encompasses the relationship between Carrigan and Vasquez. This is evidenced by the testimony given by Scott Scherer, General Counsel to Governor Guinn, during the 1999 legislative session. To fall within NRS 281A.420(8)(e), Scherer testified, "it has to actually be shown that the relationship is substantially similar to one of the four other relationships listed, including a member of one's family, member of one's household, an employment relationship, or a business relationship." Hearing on S.B. 478 Before the Senate Governmental Affairs Comm., 70th Leg. (Nev., April 7, 1999). When asked by Senator Titus how campaign managers fit into the statute, Scherer stated that if "the same person ran your campaign time, after time, after time, and you had a substantial and continuing relationship, yes, you probably ought to disclose and abstain in cases involving that particular person." Hearing on S.B. 540 Before the Senate Governmental Affairs Comm., 70th Leg. (Nev., March 30, 1999) (discussing S.B. 478).

"[T]here are limitations in the English language with respect to being both specific and manageably brief." *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 578-79 (1973). The Supreme

Supreme Court
OF
Nevada

(O) 1947A

10

Court's opinion in this case examines the history of recusal rules, dating back to 1791, and gives example after example of provisions considerably less definite than NRS 281A.420(2)(c) and NRS 281.420(8) that nonetheless have withstood the test of time. *Carrigan*, 564 U.S. at ___, 131 S. Ct. at 2347-49. Given the long common-law history of disqualifying local officials from voting on matters when they have conflicts of interest—a history that offers no satisfactory, one-size-fits-all definition of "conflict of interest"—the statute could have ended with the general proscription in NRS 281A.420(2)(c) and been unexceptionable. *Id.* at ___, 131 S. Ct. at 2348 ("The Nevada Supreme Court and Carrigan have not cited a single decision invalidating a generally applicable conflict-of-interest rule—and such rules have been commonplace for over 200 years."); *see* 4 Patricia E. Salkin, *American Law of Zoning* § 38:2, at 38-5 (5th ed. 2013) (while "[s]ome state statutes provide specific guidance as to what constitutes a conflict of interest in the land use context . . . most states are silent on this issue [while still others] simply provide a catch-all phrase stating that even if the complained of conduct does not violate another specific section of the law, where the conduct gives an 'appearance of impropriety' it may be prohibited"); 2 Sandra M. Stevenson, *Antieau on Local Government* § 25.08[1], at 25-43 (2d ed. 2012) ("The decision as to whether a particular interest is sufficient to disqualify [a public official] is necessarily a factual one and depends on the circumstances of the particular case. *No definitive test has been devised.*" (emphasis added)). We are disinclined to invalidate a civil statute addressing conflicts of interest by public officials on the grounds that, in some cases, it poses problems of application that require case-by-case elaboration, in common law fashion. *See Vrljicak v. Holder*, 700 F.3d 1060, 1063 (7th Cir. 2012).

Carrigan's claim that he did not have fair notice that he risked censure under NRS 281A.420(2)(c) if he voted on the Lazy 8 project, despite Vasquez's dual role as paid lobbyist and campaign manager and close friend, ignores the Ethics Law's advisory opinion option. "When a statute is accompanied by an administrative system that can flesh out details, the due process clause permits those details to be left to that system." *Bauer v. Shepard*, 620 F.3d 704, 716 (7th Cir. 2010). In rejecting a vagueness challenge to parts of the Hatch Act in *Letter Carriers*, 413 U.S. at 580, for example, the Supreme Court deemed it "important . . . that the Commission has established a procedure by which an employee in doubt about the validity of a proposed course of conduct may seek and obtain advice from the Commission and thereby remove any doubt there may be as to the meaning of the law, at least insofar as the Commission itself is concerned." *See Vill. of Hoffman Estates*, 455 U.S. at 498 (vagueness concerns diminish when the regulated person has "the ability to clarify the meaning of the regulation . . . by resort to an administrative process"); *Groener v. Or. Gov't Ethics Comm'n*, 651 P.2d 736, 742-43 (Or. Ct. App. 1982) (upholding Oregon's Ethics Law against vagueness challenge and noting that the "fair warning" test was satisfied by the statutory procedure "by which a public official in doubt about the propriety of proposed conduct may petition for and obtain the Commission's opinion, which is binding on the Commission as to that petitioner" (citing *Letter Carriers*, 413 U.S. at 580)).

Vasquez was receiving a $10,000-a-month retainer from the Lazy 8 project proponents. While lobbying for the project before the Sparks City Council, Vasquez was simultaneously serving as Carrigan's campaign manager free of charge and placing media ads for Carrigan at

cost. Carrigan recognized the problem his relationship with Vasquez posed, and he testified that he knew that he could ask the Ethics Commission for an advisory opinion on whether it required him to abstain on the Lazy 8 project vote. And as the district court expressly found, Carrigan had "ample time and opportunity" to request an opinion from the Ethics Commission: NRS 281A.440(1) provides for the Commission to issue its opinion as soon as practicable or within 45 days after receiving a request; Vasquez "became . . . Carrigan's [reelection] campaign manager 6 months or more before the City Council meeting" at which the Lazy 8 matter came to a vote.

Instead of requesting an opinion from the Commission, Carrigan sought private advice from the Sparks City Attorney, who told him he did not need to abstain. That Carrigan received mistaken legal advice led the Commission to deem his violation nonwillful, justifying censure with no penalty or fine. But on this record, Carrigan cannot claim that he lacked fair notice that NRS 281A.420(2)(c) and NRS 281A.420(8)(e) could require his recusal on the Lazy 8 matter.[4] While

---

[4]The dissent argues that the Commission's finding that Carrigan should not be assessed a civil penalty because it deemed his violation "not willful" somehow establishes that, as to him, the Ethics Law is unconstitutionally vague. Of note, after years of briefing before the Commission, the district court, this court, the Supreme Court, and again this court, Carrigan has *never* advanced this argument. *Cf. City of Las Vegas v. Cliff Shadows Prof'l Plaza, L.L.C.*, 129 Nev. ___, ___ n.2, 293 P.3d 860, 864 n.2 (2013) (issue preclusion claim waived if not timely raised). And with good reason: The Commission found that, viewed objectively, Carrigan violated the Ethics Law. Thus, the Commission stated that it declined to find a willful violation because Carrigan "reasonably relied on his counsel's advice, and because he did not consider his relationship with

*continued on next page . . .*

SUPREME COURT
OF
NEVADA

(O) 1947A

Carrigan may disagree with the Commission's interpretation of NRS 281A.420(2)(c)—preferring the private legal advice he obtained—he in fact had notice of the statute, its potential application to his vote on the Lazy 8 project, and the Ethics Commission's willingness to provide him a definitive ruling in advance of the vote. *Cf. United States v. Zhen Zhou Wu*, 711 F.3d 1, 14-15 (1st Cir. 2013) (rejecting claimed lack of fair notice by challengers who had concerns about the law's application to them yet failed to pursue an available, official answer on the matter).

Analyzed on an as-applied basis, *see United States v. Jones*, 689 F.3d 696, 702 (7th Cir. 2012) ("Vagueness challenges are normally evaluated in light of the particular facts of the case, not in general."),[5]

---

*. . . continued*

Mr. Vasquez a relationship that falls under the statute." Carrigan did not subjectively mean to violate the law; he just relied on faulty legal advice from the Sparks City Attorney. *See also* NRS 281A.170(5), *reprinted supra* section I.A (the Commission may not deem a violation "willful" if the officer meets three requirements, the first of which is that he "relied in good faith upon the advice of the legal counsel retained by the public body which the public officer represents"). However, the fact the Commission absolved Carrigan of willfulness even though NRS 281A.170(5) did not require it to do so does not excuse the violation itself, much less constitute an admission by the Commission that the conflict-of-interest recusal provision is unconstitutionally vague as to Carrigan. *See United States v. Nasir*, No. 5:12-CR-102-JMH, 2013 WL 5373625, at *5 (E.D. Ky. Sept. 25, 2013) (rejecting vagueness challenge to the federal Controlled Substance Analogue Enforcement Act and noting that a defendant who by his inquiries acknowledged that his activities fell "within a gray area of legality" is hard-pressed to claim an unconstitutional lack of fair notice).

[5]Although Carrigan insists that he "has raised both a facial and an as-applied challenge," he acknowledges that "he is seeking only to set

*continued on next page . . .*

Carrigan's claim that NRS 281A.420(2)(c) and NRS 281A.420(8)(e) are so lacking in standards as to authorize or encourage "'seriously discriminatory enforcement,'" *Humanitarian Law Project*, 561 U.S. at ___, 130 S. Ct. at 2718 (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)), also fails. Nothing in the record suggests that the bipartisan Commission harbored an improper motive or failed to sanction other similarly situated persons. On the contrary, the Commission evenhandedly sanctioned another council member for his vote *against* the Lazy 8 project because of an undisclosed business relationship with the Nugget, a competing casino that opposed the Lazy 8. *See In re Salerno*, No. 08-05C (Nev. Comm'n on Ethics, Dec. 2, 2008). And, as the Supreme Court noted, the recusal statute Carrigan challenges is "content-neutral and applies equally to all legislators regardless of party or position." *Carrigan*, 564 U.S. at ___, 131 S. Ct. at 2350.

The recusal provisions in NRS 281A.420(2)(c) and NRS 281A.420(8)(e) use qualitative terms such as "reasonable" and "substantially similar." Although terms of degree, these terms are objective and do not require the kind of "untethered subjective judgments"—such as whether a defendant's conduct was "annoying" or "indecent"—that the Supreme Court has invalidated as unconstitutionally vague. *Humanitarian Law Project*, 561 U.S. at ___, 130 S. Ct. at 2720; *Williams*, 553 U.S. at 306. "[P]rotean words such as 'reasonable' are

---

*. . . continued*

aside the censure and that his claim and the relief that would follow accordingly apply only to him." (internal quotation marks omitted).

ubiquitous in law. Think of the reasonable-person standard in tort law" or "the phrase 'good cause' that peppers" the rules of civil procedure. *Vrljicak*, 700 F.3d at 1062. Objective standards such as these may require case-by-case evaluation, but they do not call for the wholly subjective, unreviewable judgments that invite seriously discriminatory enforcement, in violation of the due process clause. *Id.*

## B.

On remand from the Supreme Court, Carrigan now argues, for the first time,[6] that the Commission's censure of him under NRS 281A.420(2)(c) and NRS 281A.420(8)(e) violates the First Amendment right of association that Carrigan and his political supporters share. This afterthought argument does not fit either the facts or the statutory text. As a paid lobbyist, Vasquez had a private, pecuniary interest in the Lazy 8 project, and Carrigan, the Commission found, had a commitment in a private capacity to Vasquez's interests. If Carrigan's wife were a lawyer whom the Lazy 8 hired for $10,000 per month to advocate for it before the Sparks City Council, Carrigan would have had to recuse. His "commitment in a private capacity" to her private, pecuniary interests would be disqualifying. From a right-of-association perspective, Carrigan's disqualification based on Vasquez's retention is no different.

---

[6]Arguments not raised before the appropriate administrative tribunal and in district court normally cannot be raised for the first time on appeal. *See Valley Health Sys., L.L.C. v. Eighth Judicial Dist. Court*, 127 Nev. ___, ___, 252 P.3d 676, 679 (2011); *Allstate Ins. Co. v. Thorpe*, 123 Nev. 565, 571, 170 P.3d 989, 993 (2007). We have, on occasion, departed from this rule where, as here, the issue presents a constitutional question that can be resolved as a matter of law. *See Levingston v. Washoe Cnty.*, 112 Nev. 479, 482-83, 916 P.2d 163, 166 (1996).

The recusal provisions expressly renounce association as the basis for recusal. Thus, NRS 281A.420(2)(c) states the general rule that a public officer shall not vote on "a matter with respect to which the independence of judgment of a reasonable person in his situation would be materially affected by . . . [h]is commitment in a private capacity to the interests of others." But the statute follows that rule with an exception: It *presumes* that "the independence of judgment of a reasonable person would not be materially affected by . . . his commitment in a private capacity to the interest of others *where the resulting benefit or detriment* accruing to him *or to the other persons whose interests to which the member is committed in a private capacity* is not greater than that accruing to any other member of the general business, profession, occupation or group" concerned. *Id.* (emphases added). This presumption did not save Carrigan's relationship with Vasquez from requiring Carrigan's recusal precisely because "the resulting benefit or detriment accruing" to Vasquez from the vote on the Lazy 8 project was greater than that accruing to other concerned citizens, given the pecuniary benefit to Vasquez of his employment by the Lazy 8 developers. The statute as applied to this case thus does not penalize "simple association or assembly," and the right-of-association cases on which Carrigan relies are inapposite. *Humanitarian Law Project*, 561 U.S. at ___, 130 S. Ct. at 2730.

NRS 281A.420 serves to ensure that its public officers "avoid conflicts between [their] private interests and those of the general public whom [they] serve[ ]." NRS 281A.020(1)(b). Even accepting arguendo that the recusal provision somehow burdens Carrigan's associational rights, the burden is scant when compared to the state's important interest in

avoiding conflicts of interest and self-dealing by public officials entrusted with making decisions affecting our citizens. *See Clingman v. Beaver*, 544 U.S. 581, 586-87 (2005) (a reasonable, nondiscriminatory regulation that imposes an incidental burden on associational rights is acceptable when justified by a state's important regulatory concerns).

We therefore affirm.

_____ , C.J.
Pickering

We concur:

_____ , J.
Gibbons

_____ , J.
Hardesty

_____ , J.
Saitta

_____ , D.J.
Earl

DOUGLAS, J., with whom CHERRY, J., agrees, dissenting:

While I agree with parts of the majority's opinion, I disagree with their conclusion upholding the Commission's censure of Carrigan for violating NRS 281A.420(2)(c) (2007) (amended 2009), in light of the Commission's additional finding that the violation was not willful under NRS 281A.170 (2007) (amended 2009).

NRS 281A.420(2)(c) states that "... a public officer shall not vote upon ... a matter with respect to which the independence of judgment of a reasonable person in his situation would be materially affected by ... [h]is commitment in a private capacity to the interests of others." In its decision, the Commission explained that "'commitment in a private capacity to the interest of others' ... contemplated close relationships which rise to such a level of commitment to another person's interests that the independence of judgment of a reasonable person in the public officer's position would be affected." Ultimately, the Commission found that Carrigan had a commitment in a private capacity to the interests of Vasquez. Then, as the majority notes, in applying its interpretation of NRS 281A.420(2)(c) to Carrigan, the Commission found that "[a] reasonable person in Councilman Carrigan's position would not be able to remain objective" under the circumstances. Based on this reasoning, the Commission determined that Carrigan violated NRS 281A.420(2)(c) by voting on the Lazy 8 matter.

The Ethics in Government statutory scheme also contains provisions for the imposition of civil penalties based on willful violations of

its provisions. *See* NRS 281A.480 (2007) (amended 2009). In finding that Carrigan violated NRS 281A.420(2)(c), the Commission determined that no civil penalty would apply because Carrigan's violation was not willful. Under the statute, the Commission could determine a violation was not willful based on two provisions. First, an action by a public officer would not be a willful violation if, *inter alia*, "[h]e was unable, through no fault of his own, to obtain an opinion from the Commission before the action was taken." NRS 281A.480(5)(b) (2007). Here, as the majority points out, and supported by the Commission's decision, Carrigan was aware that he could have sought an advisory opinion,[1] and he had ample time to do so. Accordingly, the Commission's determination that Carrigan's violation was not willful could not be based on NRS 281A.480(5).

The second potential statutory basis for determining Carrigan's violation was not willful is found in NRS 281A.170 (2007) (amended 2009), which provides that "'[w]illful violation' means the public officer or employee knew or reasonably should have known that his conduct violated this chapter." Because NRS 281A.480(5) is precluded, the Commission's determination must arise from NRS 281A.170. Thus, the Commission made two relevant conclusions: Carrigan violated NRS

---

[1]It should be noted that, although Carrigan did not obtain an advisory opinion from the Commission, he did obtain one from the Sparks City Attorney.

281A.420(2)(c), and that violation was not willful (knowingly) under NRS 281A.170.

As the majority indicates, a law is impermissibly vague "if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited.'" *State v. Castaneda*, 126 Nev. ___, ___, 245 P.3d 550, 553 (2010). Here, in determining that Carrigan's violation was not willful, the Commission inescapably concluded that he did not know and should not have reasonably known that his conduct would violate NRS 281A.420(2)(c). In this lies the dispositive contradiction: the Constitution requires that laws be of a nature that a person reasonably should know what is prohibited; yet, here, the Commission concluded that Carrigan should not have reasonably known that his conduct was prohibited. Thus, the Commission's determination that Carrigan did not willfully violate the statute equates to a legal conclusion that NRS 281A.420(2)(c) is vague as applied to Carrigan. Accordingly, this court should vacate the Commission's censure of Carrigan.[2]

The majority opinion does not directly address the "fair notice" test for vagueness as it relates to the aforementioned contradiction and

---

[2]Note that the provision defining "willful violation" was amended in 2009, presumably to avoid this inherent contradiction—a problem that would necessarily arise in each Commission decision finding a nonwillful violation under the 2007 language of the statute. The fact that the Commission was forced to work with imperfect language is of no importance. However, it is of great importance that this court considers Carrigan's as-applied challenge with the utmost fidelity to the statute's plain language, even when its natural import is problematic under the circumstances.

Carrigan's as-applied challenge. While acknowledging that the U.S. Supreme Court has suggested that an advisory opinion option diminishes vagueness concerns, here, the majority treats it as though it disposes of them entirely.[3] This eager embrace of a new idea seems premature given the unique context here and should be tempered to a salutatory handshake. However, the majority concludes that, under the circumstances, any vagueness problems are cured by the statute's advisory opinion option found in NRS 281A.440(1) (2007) (amended 2009).

While the advisory opinion option might lend support to the majority's conclusion that the challenged statutory provisions are not facially vague, it is clearly insufficient to quell Carrigan's as-applied challenge. Here, the Commission made a finding that Carrigan knew about the advisory opinion option. Despite this, the Commission still found that Carrigan's violation was not willful and that he did not know and should not have reasonably known that his conduct would violate NRS 281A.420(2)(c). The majority reasons that, because Carrigan had notice of the statute, of its potential application, and of the ability to obtain an advisory opinion, he had fair notice of what was prohibited at law. This determination runs directly against the Commission's

---

[3]The U.S. Supreme Court opinion referenced only peripherally addresses the impact of an advisory opinion option and does so only in the context of economic regulation. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). The impact of adopting a similar conclusion in the political context might merit an independent analysis considering the potential restraint it imposes on elected officials in their representative capacity.

conclusion that Carrigan's violation was not willful. The anomaly recognized in this opinion cannot justifiably be ignored or overcome. For these reasons, I dissent in part and believe that the Commission's censure of Carrigan should be vacated.

_____, J.
Douglas

I concur:

_____, J.
Cherry