An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

CITIZEN OUTREACH, INC.,
Appellant,
vs.
STATE OF NEVADA BY AND
THROUGH ROSS MILLER, ITS
SECRETARY OF STATE,
Respondents.

No. 63784

**FILED**

FEB 11 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

*ORDER OF REVERSAL*

This is an appeal from a district court judgment concerning violations of the campaign practices statutes. First Judicial District Court, Carson City; James E. Wilson, Judge.

Prior to the 2010 general election, appellant Citizen Outreach, Inc., published and distributed two flyers criticizing then-Assemblyman and candidate for reelection John Oceguera. The State filed a civil complaint alleging that Citizen Outreach violated Nevada's campaign practices statutes by publishing the flyers but failing to disclose its contributors and expenditures. The district court granted summary judgment in favor of the State, ordered Citizen Outreach to pay civil penalties and attorney fees, and issued an injunction requiring Citizen Outreach to disclose its contributors and expenditures according to Nevada's campaign practices statutes. Citizen Outreach now appeals.

We review summary judgments de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* Here, Citizen

Outreach does not dispute that it published the flyers or that it did not disclose its contributors and expenditures, and we are asked only to decide whether the flyers were express advocacy under applicable Nevada law. Because we conclude that the flyers did not expressly advocate the defeat of Oceguera under the applicable versions of Nevada's campaign practices statutes, we reverse.

In 2010, when Citizen Outreach distributed the flyers, an organization that made an "expenditure" on behalf of a candidate was required to disclose all contributors who gave the organization more than $100, NRS 294A.140(1) (2007), and all expenditures over $100, NRS 294A.210(1) (2007). "[E]xpenditure[ ]" was defined as money spent "to *advocate expressly* the election or defeat of a clearly identified candidate," NRS 294A.004(2) (2009) (emphasis added), but "advocate expressly" was not defined by statute until 2011. 2011 Nev. Stat., ch. 501, § 36, at 3286; *see also* NRS 294A.0025.

Citizen Outreach argues that the 1997 Legislature, which enacted the essential language contained in NRS 294.004(2) (2009), 1997 Nev. Stat., ch. 118, § 17, at 238-39, intended to create a bright-line rule limiting express advocacy to communications containing so-called magic words of advocacy. These words may include "'vote for,' 'elect,' 'support,' . . . 'vote against,' 'defeat,' [or] 'reject.'" *Buckley v. Valeo*, 424 U.S. 1, 44 n.52 (1976); *see also, e.g., Fed. Election Comm'n v. Christian Action Network, Inc.*, 110 F.3d 1049, 1051 (4th Cir. 1997); *Fed. Election Comm'n v. Cent. Long Island Tax Reform Immediately Comm.*, 616 F.2d 45, 52-53 (2d Cir. 1980). In contrast, the State argues that the Legislature intended to include as express advocacy communications that lack magic words but nevertheless unambiguously command readers to vote for or

against a candidate. *See Fed. Election Comm'n v. Furgatch*, 807 F.2d 857, 864 (9th Cir. 1987); 11 C.F.R. § 100.22(b) (2011); *see also* 2011 Nev. Stat., ch. 501, § 36, at 3286 (adopting this broader definition of express advocacy). Both of these interpretations are plausible, thus we turn to the legislative history for guidance. *See State, Div. of Ins. v. State Farm Mut. Auto. Ins. Co.*, 116 Nev. 290, 294, 995 P.2d 482, 485 (2000) (stating that this court will turn to legislative history when interpreting an ambiguous statute).

Having reviewed the legislative history of NRS 294A.004(2) (2009), it is unclear which interpretation of "advocate expressly" the 1997 Legislature intended to adopt. Weighing in favor of Citizen Outreach's proposed interpretation, *Furgatch* was not mentioned by name in the legislative history, whereas *Buckley* was. *See* Hearing on S.B. 215 Before the Senate Government Affairs Comm., 69th Leg. (Nev., April 7, 1997), at 7-8. In addition, the majority of courts having decided the issue prior to 1997 held that a communication was not express advocacy without magic words. *See, e.g., Christian Action Network*, 110 F.3d at 1050-51; *Fed. Election Comm'n v. Colo. Republican Fed. Campaign Comm.*, 59 F.3d 1015, 1023 n.10 (10th Cir. 1995), *vacated on other grounds*, 518 U.S. 604, 626 (1996); *Faucher v. Fed. Election Comm'n*, 928 F.2d 468, 470-71 (1st Cir. 1991); *Fed. Election Comm'n v. Mass. Citizens for Life, Inc.*, 769 F.2d 13, 20 (1st Cir. 1985), *aff'd*, 479 U.S. 238 (1986); *Cent. Long Island Tax Reform Immediately Comm.*, 616 F.2d at 53. On the other hand, legislative counsel was specifically asked to research the differences between issue advocacy and express advocacy, Hearing on S.B. 215 Before the Senate Government Affairs Comm., 69th Leg. (Nev., March 19, 1997), at 11, and later reported that expenditures meant money spent for

SUPREME COURT
OF
NEVADA

(O) 1947A

communications that either use magic words of advocacy or that, given the context of the communication, communicate an unambiguous plea to vote for or against a clearly identified candidate. Hearing on S.B. 215 Before the Senate Government Affairs Comm., 69th Leg. (Nev., April 7, 1997), at 8. The fact that legislative counsel was answering a specific question suggests the Legislature intended to adopt the broader *Furgatch* construction mentioned by legislative counsel. Nevertheless, the Legislature did not discuss either the magic words or the contextual approach in any depth. Thus, we cannot conclude from the legislative history that the Legislature intended "advocate expressly" to include communications that lack magic words.

We are also not persuaded that the 2011 enactment of a statutory definition of "advocate expressly" unambiguously indicates the 1997 Legislature's intent. In 2011, the Legislature enacted NRS 294A.0025, which states that "[a]dvocates expressly" "means that a communication, taken as a whole, is susceptible to no other reasonable interpretation other than as an appeal to vote for or against a clearly identified candidate." Therefore, since 2011, a communication need not contain magic words to be express advocacy. NRS 294A.0025.

NRS 294A.0025 was passed in 2011 as part of Assembly Bill 81. 2011 Nev. Stat., ch. 501, § 36, at 3286. During discussion of A.B. 81, the Secretary of State explained that adding a "definition of 'express advocacy' will *make it clear* that Nevada does not require" magic words for a communication to be express advocacy. Hearing on A.B. 81 Before the Senate Legislative Operations & Elections Comm., 76th Leg. (Nev., May 5, 2011), at 5 (emphasis added). Although the Secretary of State unambiguously saw NRS 294A.0025 as clarifying rather than changing

existing law, no member of the Legislature expressed this view. *See generally* Hearing on A.B. 81 Before the Senate Legislative Operations & Elections Comm., 76th Leg. (Nev., May 5, 2011). Thus, it is not clear whether the 2011 Legislature believed NRS 294A.0025 would substantially change or merely clarify existing law. *See Pub. Emps.' Benefits Program v. Las Vegas Metro. Police Dep't*, 124 Nev. 138, 156-57, 179 P.3d 542, 554-55 (2008) ("[W]hen the Legislature substantially amends a statute, it is ordinarily presumed that the Legislature intended to change the law. Nevertheless, . . . when a statute's doubtful interpretation is made clear through subsequent legislation, we may consider the subsequent legislation persuasive evidence of what the Legislature originally intended." (Internal quotation marks and footnotes omitted.)).

The magic words test may be easy to avoid, *see Furgatch*, 807 F.2d at 863, but it is also a bright-line rule that is easy for potential speakers to understand and for the State to enforce. *See Iowa Right to Life Comm., Inc. v. Williams*, 187 F.3d 963, 969 (8th Cir. 1999) (stating that *Buckley* adopted a bright-line rule "[t]o avoid uncertainty, and therefore invalidation of a regulation of political speech"). Moreover, a majority of courts in 1997 had adopted the magic words test—the Ninth Circuit was the exception. *See, e.g., Christian Action Network*, 110 F.3d at 1050-51. Therefore, the conclusion that NRS 294A.004(2) (2009) only included as express advocacy communications containing magic words is not unreasonable and will not lead to absurd results. *See D.R. Horton, Inc. v. Eighth Judicial Dist. Court*, 123 Nev. 468, 477, 168 P.3d 731, 738 (2007) (stating that this court avoids interpretations of statutes that cause absurd results).

Perhaps the 1997 Legislature intended express advocacy to include more communications than those that contain magic words, but this intent was not clear—from either the language of NRS 294A.004(2) (2009) or its legislative history—when Citizen Outreach distributed its flyers. *See State Farm Mut. Auto. Ins. Co.*, 116 Nev. at 294, 995 P.2d at 485 (stating that this court considers legislative history when interpreting an ambiguous statute). When it comes to the exercise of First Amendment rights, any "tie goes to the speaker, not the censor." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 474 (2007). As a result, we conclude that basic principles of fundamental fairness require us to construe NRS 294A.004(2) (2009) narrowly, limiting it to only those communications that contain magic words of express advocacy. *See Thomas v. Nev. Yellow Cab Corp.*, 130 Nev. ___, ___, 327 P.3d 518, 521 (2014) (stating that this court construes statutes to comport with the constitution when reasonably possible); *Carrigan v. Comm'n on Ethics*, 129 Nev. ___, ___, 313 P.3d 880, 884 (2013) (stating that due process requires laws to provide fair notice of what conduct is prohibited).

Because it is undisputed that Citizen Outreach's flyers do not contain magic words of express advocacy, the flyers were not subject to regulation under Nevada's campaign practices statutes that were effective in 2010.[1]

---

[1]We decline to address the other constitutional arguments made by the parties as unnecessary to our disposition of this appeal. *See Miller v. Burk*, 124 Nev. 579, 588-89, 188 P.3d 1112, 1118-19 (2008).

Accordingly, we

ORDER the judgment of the district court REVERSED.

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

cc:   Hon. James E. Wilson, District Judge
      David Wasick, Settlement Judge
      Center for Competitive Politics
      Mueller Hinds & Associates
      Attorney General/Carson City
      Carson City Clerk

DOUGLAS, J., with whom SAITTA, J., agrees, dissenting:

As to the campaign practices in Nevada, the magic word test should not be required, so as to allow for the transparency in disclosure of contributions and expenditures spent advocating expressly the election or defeat of a clearly identified candidate.

When the 1997 Legislature was discussing the definition of "expenditures" at issue here, legislative counsel was specifically asked to research the difference between issue advocacy and express advocacy under then-existing law. Hearing on S.B. 215 Before the Senate Government Affairs Comm., 69th Leg. (Nev., March 19, 1997), at 11. At a later committee session, legislative counsel explained that expenditures meant money spent for communications that either use magic words of advocacy or that, given the context of the communication, communicate an unambiguous command to vote for or against a clearly identified candidate. Hearing on S.B. 215 Before the Senate Government Affairs Comm., 69th Leg. (Nev., April 7, 1997), at 8.

I would note *Furgatch*[1] was not mentioned by name, but it is apparent that legislative counsel was referring to *Furgatch* and its contextual understanding of express advocacy. *See* Hearing on S.B. 215 Before the Senate Government Affairs Comm., 69th Leg. (Nev., April 7, 1997), at 8. Citizen Outreach argues that the Legislature intended to

---

[1]*Fed. Election Comm'n v. Furgatch*, 807 F.2d 857 (9th Cir. 1987).

adopt the magic words test because *Buckley*,[2] unlike *Furgatch*, was mentioned by name throughout the legislative history. That legislative history reflects, however, that the only people to name *Buckley* while advocating for the magic words test were lobbyists or members of the public. *See* Hearing on S.B. 215 Before the Senate Government Affairs Comm., 69th Leg. (Nev., March 19, 1997), at 1-2, 5, 7, 9-10. Therefore these comments do not necessarily reflect the Legislature's intent.

Moreover, the narrow magic words test as allowed by the majority will "eviscerate[e]" Nevada's disclosure requirements because a speaker can easily skirt these requirements simply "by avoiding certain key words while conveying a message that is unmistakably directed to the election or defeat of a named candidate." *Furgatch*, 807 F.2d at 863. Thus, I cannot conclude that the Legislature intended to enact this extensive legislation to achieve such little practical purpose. *See D.R. Horton, Inc. v. Eighth Judicial Dist. Court*, 123 Nev. 468, 477, 168 P.3d 731, 738 (2007) (stating that this court avoids interpretations of statutes that render language meaningless or produce absurd results). I submit that the Legislature must have intended to adopt the broader, contextual definition of "advocate expressly" discussed in *Furgatch* rather than the narrower magic words test adopted by other courts.

As to the flyers at issue here, under *Furgatch* a communication advocates expressly if (1) the "message is unmistakable and unambiguous," (2) the communication "presents a clear plea for action," and (3) it is "clear what action is advocated," such that a reasonable person could only understand that voting for or against a

---

[2]*Buckley v. Valeo*, 424 U.S. 1 (1976).

particular candidate was being advocated. *Furgatch*, 807 F.2d at 864. I submit that both of Citizen Outreach's flyers were express advocacy under *Furgatch*'s three-part test. The first flyer described Oceguera as "Getting Fat off the Taxpayers" by earning one salary as a firefighter and one as an assemblyman, "voting for tax hikes," and "sponsoring trivial legislation." The flyer concluded "[w]e don't need any more fiddling from John Oceguera." The second flyer bore similar criticisms, accused Oceguera of "gam[ing] the system to retire at age 48," and commanded voters to "tell John Oceguera that he needs to work like the rest of us!" The only way that a voter could stop Oceguera's "fiddling" or "tell" him "to work like the rest of us" was by voting against Oceguera. Thus, these flyers communicate a clear and unambiguous plea to vote against Oceguera and are express advocacy under *Furgatch* and NRS 294A.004(2) (2009).

The Arizona Court of Appeals recently addressed a television advertisement that commanded viewers to "[t]ell [the candidate] to protect children, not people who harm them," and provided the candidate's office telephone number. *See Comm. for Justice & Fairness v. Ariz. Sec'y of State's Office*, 332 P.3d 94, 96 (Ariz. Ct. App. 2014) (first alteration in original) (internal quotation marks omitted). Because Arizona law contemplated a contextual understanding of express advocacy similar to the *Furgatch* test, the court concluded that the advertisement was express advocacy subject to regulation. *Id.* at 100, 102. Similar to the flyers here, the advertisement in *Committee for Justice and Fairness* instructed viewers to "[t]ell" the candidate to change his behavior. *Id.* at 96. But the advertisement gave viewers a way to tell the candidate by providing the candidate's telephone number, *id.*, whereas the flyers in this case provided no such alternative method. Thus, the message of Citizen Outreach's

 

flyers was an even clearer plea to vote against Oceguera than the message in *Committee for Justice and Fairness*.

Unlike the majority, I would reject Citizen Outreach's arguments that the First Amendment mandates additional limitations on disclosure requirements not imposed by NRS Chapter 294A. Contrary to Citizen Outreach's assertions, the First Amendment does not mandate that disclosure requirements be limited to (1) communications using magic words, *McConnell v. Federal Election Commission*, 540 U.S. 93, 192-94 (2003), *overruled on other grounds by Citizens United v. Federal Election Commission*, 558 U.S. 310, 365-66 (2010); (2) contributions earmarked for political purposes by the donors, *Center for Individual Freedom, Inc. v. Tennant*, 706 F.3d 270, 292 (4th Cir. 2013); or (3) entities that have political advocacy as a major or primary purpose. *See Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1009-10 (9th Cir. 2010).

Simply put, the District Court got it right; magic words are not required as to express advocacy communications, and disclosure of contributions and expense over $100 by groups should be required.

_____, J.
Douglas

_____, J.
Saitta